IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Hydro Energy 1, S.à.r.l.,

    1 Rue Hildegard von Bingen
    L-1282 Luxembourg

Hydroxana Sweden AB,

    Drottninggatan 95A
    SE-113 60 Stockholm
    Sweden

        *Petitioners*,

v.

Kingdom of Spain,

    Abogacia General del Estado
    Calle Ayala, 5
    28001 - Madrid
    Spain

        *Respondent*.

Civil Action No. _____

**Petition to Enforce Arbitral Award**

Petitioners Hydro Energy 1 S.à.r.l. ("Hydro Energy") and Hydroxana Sweden AB ("Hydroxana") bring this action to enforce an arbitral award (the "Award") issued on August 5, 2020, in ICSID Case No. ARB/15/42 against Respondent, the Kingdom of Spain ("Spain"), following arbitration proceedings conducted in accordance with the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"). Pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a, arbitral awards issued

Draft
Privileged & Confidential

under the ICSID Convention are not subject to collateral attack and must be enforced and given the same full faith and credit as if the award were a final judgment of a court in the United States.

Accordingly, Petitioners request that this Court (1) enter an order enforcing the Award in the same manner as a final judgment issued by a court of one of the several states, and (2) enter judgment in Petitioners' favor in the amount of €30,875,000, together with interest at the one-year EURIBOR rate plus 1%, compounded annually, from June 1, 2013 until the date of payment.

A certified copy of the Award is attached as Exhibit A to the Declaration of Matthew S. Rozen ("Rozen Decl."), Exhibit 1 hereto. The Tribunal's Decision on Jurisdiction, Liability and Directions on Quantum ("Jx. Dec.") is attached as Annex A to the Award and incorporated by reference therein. *See* Award ¶¶ 7, 9. A copy of the ICSID Convention is attached hereto as Exhibit 2.

## Parties

1. Petitioner Hydro Energy is a private limited company (société à responsabilité limitée) incorporated under the laws of Luxembourg.

2. Petitioner Hydroxana is a private limited liability company (Aktiebolag) incorporated under the laws of Sweden.

3. Respondent, the Kingdom of Spain, is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1602-1611.

## Jurisdiction and Venue

4. This Court has subject-matter jurisdiction over this action pursuant to the FSIA, 28 U.S.C. § 1330(a), because this is a "nonjury civil action against a foreign state" on a claim "with respect to which the foreign state is not entitled to immunity" under the FSIA. Pursuant to Section 1605(a)(1) of the FSIA, Spain is not entitled to immunity from this Court's jurisdiction in an action to enforce an ICSID Convention award because it has waived that immunity by agreeing

Draft
Privileged & Confidential

to the ICSID Convention.  *See Tatneft v. Ukraine*, 771 F. App'x 9, 9 (D.C. Cir. 2019) (per curiam); *Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 84 (2d Cir. 2013).  Further, pursuant to Section 1605(a)(6) of the FSIA, Spain is not immune from suit because this is an action to enforce an arbitral award governed by the ICSID Convention, which is a treaty in force in the United States for the recognition and enforcement of arbitral awards.  *Blue Ridge,* 735 F.3d at 85.

5. This Court also has subject-matter jurisdiction pursuant to 22 U.S.C. § 1650a(b), which provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction over actions and proceedings" to enforce awards entered under the ICSID Convention.

6. This Court has personal jurisdiction over Spain pursuant to the FSIA, 28 U.S.C. § 1330(b).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4).

7. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. does "not apply to enforcement of awards rendered pursuant to the [ICSID] convention."  22 U.S.C. § 1650a(a).  Thus, the FAA's jurisdictional requirements do not apply to this action.

## The Underlying Dispute

8. Beginning in 1994, Spain adopted legislation with the goal of attracting investment in renewable energies, among them hydroelectric power, within its territory.  Jx. Dec. ¶¶ 73-122.  In reliance on the financial incentives and inducements provided by these legislative measures, in 2011, Petitioners invested €72.3 million in various Spanish companies that own and operate 33 hydropower generation plants in Spain's territory.  *Id*. ¶¶ 5, 64, 68.  After a change in governmental leadership, Spain adopted a series of laws between 2012 and 2015 retrenching on, and eventually revoking, the economic incentives on which Petitioners had relied in investing in hydroelectric power.  *Id*. ¶¶ 133-63.  The rescission of these incentives substantially reduced Petitioners' returns on its investments.  Award ¶¶ 26-27, 123-24.

3

Draft
Privileged & Confidential

9. Petitioners' investments in hydropower generation plants were protected by the Energy Charter Treaty ("ECT"), which "establishes a legal framework [for] promot[ing] long-term cooperation in the energy field" and seeks to "create stable, equitable, favourable and transparent conditions for investors, including a commitment to accord fair and equitable treatment." Jx. Dec. ¶¶ 541, 543-44; *see generally* ECT (Exhibit 3 hereto).

10. The ECT protects investments in the territory of a "Contracting Party" to the treaty by "Investors" located or incorporated in "other Contracting Parties." ECT, arts. 1(7), 10(1), 26.

11. Spain is a Contracting Party to the ECT,[1] so the ECT protects investments in Spain by investors located or incorporated in other Contracting Parties. Award ¶ 1; Jx. Dec. ¶¶ 446, 502(7).

12. Petitioners Hydro Energy 1 and Hydroxana Sweden AB are investors under the ECT, and are incorporated under the laws of Luxembourg and Sweden, respectively. Luxembourg and Sweden are both parties to the ECT.[2] Both entities' investments in Spain are therefore protected by the ECT. Jx. Dec. ¶ 502(7).

13. Contracting Parties to the ECT consent to submit disputes arising under that treaty to arbitration. Article 26(3)(a) of the ECT provides that "each Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration . . . in accordance with the provisions of this Article." Article 26(4)(a)(i) further provides that where "the Contracting Party of the Investor and the Contracting Party . . . to the dispute are both parties to the ICSID Convention," the dispute will be submitted for arbitration under that convention.

---

[1] ECT, *Signatories/Contracting Parties* (Feb. 18, 2019), https://energycharter.org/process/energy-charter-treaty-1994/energy-charter-treaty/ signatories-contracting-parties/.

[2] *Id.*

Draft
Privileged & Confidential

Accordingly, Spain consented to arbitrate the underlying dispute pursuant to the ICSID Convention.

14. On October 5, 2015, Petitioners filed a request with the International Centre for Settlement of Investment Disputes ("ICSID") for arbitration under the ICSID Convention. Jx. Dec. ¶ 7. Petitioners contended that Spain's legislative and regulatory actions that resulted in reducing the returns on Petitioners' investments constituted a breach of Spain's obligations under the ECT. *Id.* ¶¶ 5-6.

15. An ICSID arbitral tribunal (the "Tribunal") was constituted on May 3, 2016. Jx. Dec. ¶ 11.

16. The Tribunal conducted a hearing on jurisdiction, merits, and quantum in Paris, France from April 2, 2018, to April 5, 2018. Jx. Dec. ¶ 36.

17. On March 9, 2020, the Tribunal issued its Decision on Jurisdiction, Liability and Directions on Quantum, a 236-page decision that is incorporated by reference in the Award, in which it decided, among other things, that:

i. The Tribunal had jurisdiction over the dispute, Jx. Dec. ¶ 770(1);

ii. Spain had an obligation under Article 10(1) of the ECT to respect Petitioners' "legitimate expectation" that they would earn "a reasonable return on their investments, and that any modifications would be reasonable and equitable," Jx. Dec. ¶¶ 308-09, 695; and

iii. Petitioners' right to compensation under the ECT therefore depended on "whether the remuneration of [their] facilities" following Spain's challenged measures "accord[ed] with a reasonable rate of return," Jx. Dec. ¶¶ 697, 717; *see also id.* ¶ 770(3).

Draft
Privileged & Confidential

18. The Decision also resolved certain threshold disputes about how rate of return should be calculated. But rather than immediately deciding whether Petitioners' remuneration fell short of a reasonable rate of return—and therefore whether and to what extent Petitioners were entitled to compensation under the ECT—the Tribunal instructed the parties to "attempt to reach agreement" on the key inputs to this question: the reasonable rate of return to which Petitioners were entitled, and the actual rate of return for Petitioners' facilities. Jx. Dec. ¶¶ 761-67, 770(3)-(5).

19. On August 5, 2020, following joint submissions by the parties, Award ¶ 13, the Tribunal issued the Award. The Tribunal made findings about the rate of return and determined that Spain had breached Article 10(1) of the ECT by depriving Petitioners of a reasonable rate of return on their investments in hydroelectric power. *Id*. ¶¶ 26-27. The Tribunal thus ordered Spain to pay €30,875,000 as compensation, in addition to interest at the one-year EURIBOR rate plus 1%, compounded annually, from June 1, 2013 until the date of payment. *Id*. ¶ 162(1).

## Legal Basis for Relief

20. The ICSID Convention provides that contracting parties must "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." ICSID Convention, art. 54(1). The ICSID Convention further provides that a contracting state "with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state." *Id*.

Draft
Privileged & Confidential

21. The United States is a contracting party to the ICSID Convention and is therefore obligated to enforce the Award as if it were a final judgment of a court in the United States.[3] That obligation is fulfilled by 22 U.S.C. § 1650a, which provides:

> (a) An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

22. Arbitral awards issued against a foreign state pursuant to the ICSID Convention may be enforced by bringing a plenary action in federal court in compliance with the requirements for commencing a civil action under the Federal Rules of Civil Procedure, and with the personal jurisdiction, service, and venue requirements of the FSIA. *See Micula v. Gov't of Romania*, 104 F. Supp. 3d 42, 49-50 (D.D.C. 2015); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100, 117-20 (2d Cir. 2017).

23. Awards issued pursuant to the ICSID Convention are not subject to collateral attack in enforcement proceedings under 22 U.S.C. § 1650a. "Member states' courts are . . . not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award; under the Convention's terms, they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Mobil Cerro*, 863 F.3d at 102.

24. The ICSID Convention therefore "reflects an expectation that the courts of a member nation will treat the award as final." *Mobil Cerro*, 863 F.3d at 102; *see also* ICSID Convention, arts. 53(1), 54(1). Consistent with this mandate, 22 U.S.C. § 1650a(a) provides that

---

[3] ICSID, *List of Contracting States and Other Signatories of the Convention* (Aug. 4, 2021), https://icsid.worldbank.org/sites/default/files/2021_Aug_4_ICSID_3_ENG.pdf.

Draft
Privileged & Confidential

the FAA "shall not apply to enforcement of awards rendered pursuant to the convention," thereby "mak[ing] [the FAA's defenses] unavailable to ICSID award-debtors in federal court enforcement proceedings." *Mobil Cerro*, 863 F.3d at 120-21.  District courts thus enforce ICSID awards without allowing substantive challenges to enforcement of the awards.  *See, e.g.*, *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018); *Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*, 904 F. Supp. 2d 131, 132-34 (D.D.C. 2012); Order, *Republic of Panama v. Jurado*, No. 8:12-cv-1647, Doc. 18 (M.D. Fla. June 13, 2013).

## Cause of Action and Request for Relief

25. Arbitral awards issued pursuant to the ICSID Convention are subject to mandatory enforcement in the courts of the United States, which must give those awards the same full faith and credit as a final judgment issued by a state court.  22 U.S.C. § 1650a(a).

26. The Award was rendered in accordance with the ICSID Convention against Spain and in Petitioners' favor.  Petitioners are therefore entitled to enforce the Award's pecuniary obligations against Spain.

27. Accordingly, Petitioners are entitled to an order (a) enforcing the Award in the same manner as a final judgment issued by a court of one of the several states, and (b) entering judgment in Petitioners' favor in the amount specified in the Award.

28. Petitioners request that the Court enter judgment in euros, which is the currency specified in the Award.  *See* Award ¶¶ 123-24, 162(1).  This Court has authority to enter judgment in a foreign currency when requested by the judgment creditor.  *See Cont'l Transfert Technique Ltd. v. Federal Gov't of Nigeria*, 932 F. Supp. 2d 153, 158 (D.D.C. 2013), *aff'd*, 603 F. App'x 1, 4 (D.C. Cir. 2015); *accord Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 220 (D.C. Cir. 2018).

Draft
Privileged & Confidential

WHEREFORE, Petitioners request that the Court enter an order:

(a) enforcing the Award against Spain in the same manner as a final judgment issued by a court of one of the several states; and

(b) entering judgment against Spain and in Petitioners' favor in the amount of €30,875,000, together with interest on the damages award at the one-year EURIBOR rate plus 1%, compounded annually, from June 1, 2013 until the date of payment.

Dated: September 20, 2021

Respectfully submitted,

/s/ Matthew D. McGill
Matthew McGill, D.C. Bar #481430
mmcgill@gibsondunn.com
Matthew S. Rozen, D.C. Bar #1023209
mrozen@gibsondunn.com
Ankita Ritwik, D.C. Bar #1024801
aritwik@gibsondunn.com
Luke Zaro, D.C. Bar #1670941
lzaro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Hydro Energy 1, S.à.r.l. and Hydroxana Sweden AB*